**Russell L. BERRY, Appellant,**

v.

**Richard H. BATTEY; James I. Deam; John W. Larson; H. Lauren Lewis; John E. Sutton, Jr.; Leslie W. Jensen; Russell Peterson; James J. Dee; Celia Miner; Vincent Protsch; David Morrill; Hilton M. Briggs; Sherwood O. Berg; Duane C. Acker; Alfred L. Musson; Raymond A. Moore; Burton L. Brage; John T. Stone and John E. Thompson, Appellees.**

No. 81–1455.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1981.

Decided Dec. 15, 1981.

Lee R. Burd, Sioux Falls, S. D., for appellant.

Deming Smith (argued), Edwin E. Evans, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and DAVIES,* Senior District Judge.

STEPHENSON, Circuit Judge.

Appellant Dr. Russell L. Berry appeals from a jury verdict denying him relief on his claim filed under 42 U.S.C. § 1983. Dr. Berry, a retired professor from South Dakota State University, claimed that he had been denied tenure in violation of the Fourteenth Amendment through the exercise of his First Amendment right of free speech. He sought an award of back pay, punitive damages, placement of his salary and rank at the level of his peers, attorney's fees and court costs. A jury rendered a verdict against Dr. Berry's claims. Dr. Berry appeals claiming various errors in the case. We find no errors by the district court and we, therefore, affirm.

Dr. Berry joined the staff of the Department of Economics at South Dakota State University in 1949. In 1953, Dr. Berry was granted tenure. He remained at the university until his retirement in 1980, at age 65. Until approximately 1966, Professor Berry's career and salary paralleled his peers. Berry claims that between 1966 and 1968, a salary gap developed between him

* The Honorable Ronald N. Davies, Senior United States District Judge for the District of North Dakota, sitting by designation.

and his peers, placing him one-third below the earnings of his colleagues.

In Professor Berry's first years with the department, he devoted approximately two-thirds of his time to teaching and one-third to research. Dr. Berry was not a popular professor however. Because of the extremely low enrollment of students in his courses, he was gradually removed from regular teaching duties. By 1961, he was assigned solely to research. Thereafter, he taught only in emergency situations.

Professor Berry devoted the majority of his research efforts during the 1950's and early 1960's to land tenure. Defendants argued that this was a popular topic in the 1930's and 1940's, but that it had waned as a relevant topic by the 1950's. The chairman and review committee in the department attempted to move Dr. Berry into different areas of research but they were unsuccessful.

In 1963, Dr. Berry and others organized a local chapter of a national agricultural fraternity. When the chapter decided to purchase the house next door to Dr. Berry's residence, he resigned as secretary of the group and complained to the city zoning officials. In 1966, he protested publicly by writing letters to a local newspaper and by filing a state court action against the fraternity.

In 1964, Dr. Berry was granted a sabbatical leave for the 1964–65 school year in order for him to continue his PhD. studies. While on sabbatical leave, Professor Berry turned his research efforts to a study of the Oahe irrigation project. Relying on the previous publications and raw data of Dr. Rex Helfinstine, an associate of Dr. Berry's at the university, Dr. Berry completed a rough-draft paper criticizing the high costs and few benefits of the Oahe project. Upon returning to the university, Dr. Berry asked Dr. Helfinstine to review the paper. After reading it, Dr. Helfinstine said it was not worthy of publication because it contained no new information. Dr. Berry made no attempt to rewrite the paper or resubmit it.

In 1965, the United States Department of Agriculture conducted a comprehensive review of the economics department. The review committee commended the department with two exceptions. One of these was Dr. Berry's research efforts. The review committee recommended that a decision be made regarding the types of research in which Dr. Berry should engage in order to improve his research and its relevance.

Since 1958, Dr. Berry has not received salary increases equal to his peers, except in 1971, when no one received a salary increase. At trial, Dr. Berry contended that the disparity in his pay was due to his resistance to the location of the fraternity house in his neighborhood and his criticism of the Oahe irrigation project.

Defendants offered evidence that the primary reason for the low salary increases was Dr. Berry's failure to conduct high priority research in areas of greater benefit to South Dakota farmers and taxpayers and his refusal to accept supervision in this regard.

The jury found in favor of the defendants, dismissing all counts.

## ISSUES RAISED ON APPEAL

Dr. Berry appeals on four grounds as follows: (1) the trial court erred in refusing to admit the report of the Academic Freedom and Tenure Committee; (2) the trial court erred in imposing a six-year statute of limitations and limiting recovery to acts and omissions occurring on or after April 14, 1971; (3) the trial court erred in limiting damages to the difference between Dr. Berry's increases in salary each year after 1971 and the average increase granted his colleagues in a similar situation; and (4) the trial court erred in applying the rules stated in *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

## DISCUSSION

### Admissibility of Committee Report

Appellant argues that the district court erred in refusing to admit the report of the Academic Freedom and Tenure Committee

of South Dakota State University filed in 1971, which reviewed Dr. Berry's complaints about the university's failure to grant him salary increases. The committee concluded that, "Dr. Berry's * * * published criticism of the Oahe Project caused him to be penalized as far as his salary was concerned." The committee also found there was dissatisfaction with the value of the research Dr. Berry performed but that much of this was due to personality conflicts and improper guidance from his associates. The committee, composed of seven fellow faculty members, based its decision on a review of Dr. Berry's performance. Because the committee had only advisory power, it could only submit its report to the president of the university for his consideration. He decided not to follow its recommendation.

Dr. Berry points out that the South Dakota Board of Regents has adopted the *1940 Statement on Academic Freedom and Tenure* which was designed to protect academic freedom and ensure economic security. He contends that even though the South Dakota constitution prohibits life tenure, when a professor receives tenure, he or she should not be dismissed without a due process hearing, according to the directives of the *1940 Statement on Academic Freedom and Tenure.* Dr. Berry argues that the committee report should have been admitted during the trial as proof that he was not afforded due process.

Defendants argue that the report was inadmissible hearsay. The committee based its conclusions on testimony and fact findings outside the courtroom and it contains summaries and conclusions of its members. Defendants contend that the report was unnecessary because all but one member of the committee was available to testify at trial. They conclude that the report, which had no binding affect, was inherently unreliable and unduly prejudicial.

The district court has broad discretion in admitting evidence. *Koppinger v. Cullen-Schiltz & Associates,* 513 F.2d 901, 907 (8th Cir. 1975); *Raycraft v. Duluth, Missabe and Iron Range Railway,* 472 F.2d 27, 31 (8th Cir. 1973). The district court ruled that the report was inadmissible hearsay because it was based on summaries of oral and written statements made to the committee, many of which would be inadmissible in court. Such reports are inherently suspect. *See Koppinger v. Cullen-Schiltz & Associates, supra,* 513 F.2d at 907; *Raycraft v. Duluth, Missabe and Iron Range Railway, supra,* 472 F.2d at 31; *Picker X–Ray Corp. v. Frerker,* 405 F.2d 916, 922–23 (8th Cir. 1969).

■ It should be noted that nearly all the committee members were available and could have testified but Dr. Berry's counsel chose not to have them do so. This testimony would have provided an alternative means of admitting the findings of the committee. In light of the highly prejudicial nature of the report and its inherent untrustworthiness due to the hearsay that constituted the basis of the committee's conclusions, the district court did not abuse its discretion in refusing to admit the committee's findings into evidence.

■ Appellant also contends that he was denied tenure without the benefit of a due process hearing. Relying on the *1940 Statement of Academic Freedom and Tenure* and the A.A.U.P.'s *Statement on Procedural Standards and Faculty Dismissal Proceedings,* as adopted by the South Dakota Board of Regents, Dr. Berry argues that even though he was not dismissed, he was entitled to a due process hearing based on the failure of the university to give him pay raises.

The statements and the resolution adopting them speaks in terms of dismissal of professors. The provisions have not been construed to entitle a member of the faculty to pay raises. We are cognizant of the fact that a failure to give a professor a pay raise over a period of years may have the effect of discouraging the professor from remaining with the faculty. However, from the wording of the statements, we hold that the protection extends only to dismissals.

■ Even if a hearing was justified, we question Dr. Berry's challenge on another

ground. Dr. Berry was given a hearing before a faculty committee. The committee issued a report in his favor. He now contends that the hearing did not comply with proper procedures. In light of the fact that Dr. Berry prevailed before the committee, error, if any, was harmless.

*Statute of Limitations*

■ Dr. Berry argues that the district court erred in applying SDCL 15–2–13(2) which prescribes a six-year statute of limitations for "liability created by statute." *See Berry v. Arthur,* 474 F.Supp. 427, 432–34 (D.S.D.1979). Dr. Berry asserts that SDCL 15–2–8(4), a ten-year statute of limitations for "relief not otherwise provided" in the statute of limitations, was the applicable statute or, in the alternative, that the failure to give Dr. Berry pay raises was a continuing violation tolling the statute of limitations. We cannot say that the district court erred in applying the six-year statute of limitations and in holding that the statute was not tolled under applicable South Dakota law. *See Clark v. Mann,* 562 F.2d 1104, 1111–12 (8th Cir. 1977).

■ Furthermore, the district court applied the statute only as a limitation of damages. It instructed the jury that it was to consider damages only within the six years prior to the trial. However, the court fully admitted evidence of alleged discrimination both before and after April 14, 1971, the limitation date. Moreover, it is unnecessary to rule on the proper statute of limitations in light of the jury's determination that there was no underlying liability. Even if error was committed, the jury's verdict rendered it harmless.

*Limitation of Damages*

Dr. Berry contends that the district court erred in denying admission of exhibits pertaining to the salary differential between Dr. Berry and his peers prior to the 1971–72 school year. Because this relates solely to the computation of damages and in light of the jury's determination that there was no underlying liability, as stated above, we see no need to reach this issue.

*Application of Mt. Healthy Rule*

The Supreme Court held in *Mt. Healthy City School District v. Doyle, supra,* 429 U.S. at 274, 97 S.Ct. at 569, that if the plaintiff can show by a preponderance of the evidence that the repression of constitutionally protected conduct was a "substantial" or "motivating" factor in causing harm, the burden shifts to the defendant to show that the same result would have been reached in the absence of such conduct. *Id.* at 284–87, 97 S.Ct. at 574–76.

> The district court instructed the jury:
>
> Even assuming that * * * improper intentions were a motivating factor, however, it would be a defense * * * that the defendants would have denied plaintiff salary increases and promotions even if plaintiff had not exercised his right to freedom of speech.

Dr. Berry argues that this rule should not be applied to a researcher in a public institution. Because he raises this argument for the first time on appeal, he must argue that the instruction constituted plain error. We have held that plain error is " 'confined to the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.' " *Wright v. Farmers Co-op,* 620 F.2d 694, 699 (8th Cir. 1980) (quoting *Figge Auto Co. v. Taylor,* 325 F.2d 899, 907 (8th Cir. 1964)).

■ Dr. Berry has not shown that the instruction based on the *Mt. Healthy* decision constituted plain error. The Supreme Court said, in announcing its rule in *Mt. Healthy:*

> The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct. A borderline or marginal candidate should not have the employment question resolved against him because of constitutionally protected conduct. But that same candidate ought not to be able, by engaging in such conduct, to prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply

because the protected conduct makes the employer more certain of the correctness of its decision.

*Mt. Healthy City School District v. Doyle, supra,* 429 U.S. at 285–86, 97 S.Ct. at 575.

The same concern as expressed by the Supreme Court in the *Mt. Healthy* decision exists in Dr. Berry's case. If the jury was convinced that Dr. Berry had proven that the university's conduct was substantially motivated by repression of constitutionally protected conduct, it was proper for the jury to consider whether the university could prove the same result would have been reached even if the university had not acted in such fashion. In light of the Supreme Court's mandate, we see no error in the district court's instruction.

For the reasons stated above, we therefore affirm the district court.

Affirmed.