785 P.2d 71

Eldon G. BOWMAN,
Plaintiff–Appellant,
Cross–Appellee,

v.

BOARD OF REGENTS OF the UNIVER-
SITIES AND STATE COLLEGES OF
ARIZONA, and Eugene M. Hughes, in-
dividually and in his capacity as Presi-
dent of Northern Arizona University,
Defendants–Appellees, Cross–Appel-
lants.

No. 1 CA–CV 88–300.

Court of Appeals of Arizona,
Division 1, Department A.

Sept. 21, 1989.

Reconsideration Denied Nov. 7, 1989.

Review Denied Jan. 30, 1989.

Venable & Randall by Gilbert T. Venable and Marton & Hall, P.A. by Kraig J. Marton, Phoenix, for plaintiff-appellant, cross-appellee.

Mangum, Wall, Stoops & Warden by A. Dean Pickett and Stephen K. Smith, Flagstaff, for defendants-appellees, cross-appellants.

## OPINION

JACOBSON, Presiding Judge.

The primary issue in this appeal from summary judgment is whether Eldon G. Bowman abandoned his employment contract with Northern Arizona University as a matter of law by not returning a signed contract within a designated time. Subsidiary issues include whether this court has jurisdiction, in absence of a cross-appeal, of an issue raised by appellees as a "cross-issue" dealing with the trial court's setting aside a judgment dismissing the lawsuit for failure to prosecute. We find that there are disputed issues of material fact relative to abandonment and reverse the judgment of the trial court. We do not consider whether the trial court erred in setting aside the dismissal because the Board of Regents did not file a cross-appeal on that issue.

## FACTS

This case has a lengthy and complex history, including a prior appeal to this court. *Bowman v. Board of Regents*, 1 CA–CIV 7628 (memorandum decision filed Dec. 17, 1985). The pertinent facts are as follows.

Bowman was a tenured faculty member at Northern Arizona University. In connection with his duties as chair of a faculty committee, he suspected improper management of faculty funds by administration officials and made various attempts to expose what he perceived to be possible wrongdoing. During the course of a formal evaluation of Bowman's performance as a faculty member, his faculty peers and students gave him an evaluation rating that would have entitled him to a merit pay increase for the 1981–82 academic year. The administration, however, reduced his rating by two categories to a deficiency rating without a merit pay increase.

Bowman objected to the evaluation and requested a hearing on the matter. On May 11, 1981, the university sent Bowman a proposed contract for the following academic year that did not include a merit pay increase because of the administration's prior evaluation of his job performance. After receiving the proposed contract, Bowman wrote to President Eugene M. Hughes, stating in part:

> I want to challenge the evaluation by my department chairman as unfair and arbitrary ...
>
> I request use of the regular University channels and procedures provided for such challenges; that I be informed of those procedures; that I be informed of the particulars of my ratings; and that my 1981–82 contract offer be held in abeyance until the review of my challenge has been completed. My request to Dean Little, dated April 22, 1981, is attached; I have received no response.

Not having received a response, Bowman again wrote to President Hughes:

> I expect to hear from you at your early convenience concerning my challenge to my 1980–81 faculty rating. I have not

returned my 1981–82 contract pending the resolution of the challenge.

My intention is to continue my professional work at the university in the fall.... However, since my 1981–82 contract is contingent on my performance evaluation for 1980–81, it would seem proper to review the evaluation before completing the contract.... I trust the matter will be taken up shortly.

On July 10, 1981, President Hughes replied in a letter to Bowman:

Please excuse my tardiness in responding to your letter of May 29th. I did request that Dr. Cotera follow-up on the hearing that you requested but have just learned that he did not do so....

At this point I do want to indicate to you that I have asked Dr. Joseph Cox, Vice President for Academic Affairs, to move immediately to provide you with an appropriate hearing regarding your evaluation for the 1980–81 academic year. *We will hold your 1981–82 contract in abeyance pending the resolution of the challenge.*

(Emphasis added.)

No hearing was held. However, the matter was reviewed by Dr. Cox. Dr. Cox wrote to Bowman on August 6, 1981, indicating that he was recommending to President Hughes that Bowman's "merit evaluation ... be changed from Category IV to Category III (satisfactory—without merit adjustment)."

On August 19, 1981, Dr. Cox wrote Bowman, advising him that the 1981–82 contract had to be signed and returned no later than Friday, August 21, 1981, at 3:00 p.m. Bowman responded to Dr. Cox's letter on August 20 by stating:

... in answer to your statement that you have no alternative but to assume that I do not intend to return to my position at the University. The assumption is incorrect. The President has my assurance, in a letter he received some time ago, that I intended to continue my work at the University this fall term, giving the administration ample time to conduct a fair review. I have so acted, participating in all my duties and depart-

mental functions, even before the date specified by contract, have continued to this moment, and will continue to work until removed or forced out.

On August 20, 1981, another letter from Dr. Cox was hand-delivered to Bowman. This letter provided in part that:

Because of the requirements of law, and the necessity on the part of the University to insure continuity of instruction in your department, my requirement that your signed employment contract be returned to the Office of the President by Friday, August 21, 1981, by 3:00 p.m., stands. There is no other method permitted by State law for you to continue in the employment of Northern Arizona University, and we will deem your position to be abandoned in the absence of the return of your contract by that deadline.

Bowman received Dr. Cox's letter before the deadline but did not return the contract. On August 23, 1981, Bowman received a letter from Dr. Cox advising that Bowman could neither resume his duties nor appear in the classroom because he had failed to comply with the requirements of signing a written contract.

On August 24, 1981, President Hughes advised Bowman that he was considered to have abandoned his employment with N.A.U. and that he was not considered to be a faculty member. This decision was affirmed by the Board of Regents on December 12, 1981.

Bowman filed suit in federal district court based on 42 U.S.C. § 1983, the United States Constitution, and state contract law contending, as he contends here, that his termination at the university was in retaliation for his exercise of the right of freedom of speech in reporting the improper management of faculty funds and was therefore unconstitutional. The district court granted summary judgment in favor of defendants without comment and the decision was affirmed following an appeal to the ninth circuit. Bowman had at the same time also filed a complaint for breach of contract in state superior court. Following the federal court action, the superior

court judge entered summary judgment against Bowman based on the doctrine of *res judicata.* That judgment was appealed to this court, which held that because the district court did not have to consider the merits of the contract claim in order to reach its decision, *res judicata* was not applicable to the state court action. Therefore, this court reversed summary judgment and remanded to the trial court for further proceedings. *Bowman,* 1 CA–CIV 7628.

After remand, the Board of Regents and President Hughes again moved for summary judgment. [Hereinafter defendants will be referred to as the board unless the context requires a separation of the parties' respective interests.] Judge Jeffrey Cates denied the motion on grounds that the doctrine of promissory estoppel, as defined in *Restatement (Second) of Contracts* § 90 (1981) (§ 90), provided a potential basis for submission of the case to a factfinder. The board's motion for reconsideration was heard by Judge Norman D. Hall, Jr., because Judge Cates had been assigned to the criminal division. Judge Hall rejected the application of § 90 and determined that given the undisputed, material facts, Bowman had willfully abandoned his employment with Northern Arizona University as a matter of law. Thus, almost six years after this contract dispute arose, the court entered final judgment on March 28, 1988, and Bowman timely appealed to this court. The board filed a cross-appeal from the trial court's denial of its request for attorney's fees.

## MOTION FOR RECONSIDERATION

Bowman first argues that Judge Hall's order constituted an improper "horizontal appeal" of Judge Cates' previous order. The rule is well established that a trial court judge should not reconsider a motion previously decided by another trial court judge unless new circumstances justify a fresh examination. *Chanay v. Chit-*

*tenden,* 115 Ariz. 32, 34, 563 P.2d 287, 289 (1977); *Union Rock & Materials Corp. v. Scottsdale Conference Center,* 139 Ariz. 268, 272, 678 P.2d 453, 457 (App.1983). Therefore, Arizona appellate courts have been highly critical of an attempt to bring the same motion before different superior court judges in the hope of finding one who will make a favorable ruling. *See, e.g., Mozes v. Daru,* 4 Ariz.App. 385, 389, 420 P.2d 957, 961 (1966). However, the record in this case indicates that the board's motion for reconsideration was not an attempt to bring such an impermissible "horizontal appeal."

Judge Cates' denial of summary judgment was based on his conclusion that because of the applicability of § 90, *Restatement (Second) of Contracts,* factual issues remained unresolved concerning Bowman's right to rely on President Hughes' assurance that Bowman's contract would be held in abeyance until a hearing was provided.

The board, in its motion for reconsideration, contended that the parties' previous pleadings had not raised the applicability of § 90 to the facts, and argued that promissory estoppel will not lie against the state. Bowman had argued in his response to the original motion for summary judgment that a binding contract existed between President Hughes and Bowman because he was entitled to rely on Hughes' assurance that his contract would be held in abeyance. He did not assert the principles of promissory estoppel as set forth in § 90. Under these circumstances, we find that Judge Hall did not err in reconsidering the motion for summary judgment as the motion for reconsideration raised issues that the board had not had an opportunity to address.[1]

## ABANDONMENT

Bowman's basic contention on appeal is that the trial court erred in finding that he had abandoned his contract as a matter of law. He argues that abandonment of a contract is a matter of intent, *Cords v.*

---

1. Although we find no error here, we note that Maricopa County has, in the past, followed a practice of motions for reconsideration being heard by the original judge, even though that judge may have been transferred to another division of the court. We approve of this informal practice.

*Window Rock School Dist. No. 8,* 22 Ariz. App. 233, 236, 526 P.2d 757, 760 (1974); *Thermo–Kinetic Corp. v. Allen,* 16 Ariz. App. 341, 345, 493 P.2d 508, 512 (1972), which is a question of fact. *Kolberg v. McKean's Model Laundry & Dry Cleaning Co.,* 9 Ariz.App. 549, 550, 454 P.2d 867, 868 (1969).

Bowman contends that he clearly expressed his intent to university officials that he did not wish to give up his position and that his failure to return the written contract was in reliance upon promises by President Hughes to hold his contract in abeyance until he had been granted a hearing.

The board, on the other hand, contends that Bowman's intent is immaterial, for as a matter of law, Bowman abandoned his contract by failing to return it signed within the time limits set by Dr. Cox. In support of this contention, the board relies on numerous cases that hold that failure of a teacher to comply with a statutory deadline for returning an employment contract constitutes abandonment. *See, e.g., Walker v. Sierra Vista Unified School Dist. No. 68,* 147 Ariz. 604, 712 P.2d 451 (App.1985). The board cites numerous other authorities holding the untimely return of a teacher's contract pursuant to university regulations or policy constitutes abandonment of the position as a matter of law. *See, e.g., Jordan v. Board of Regents,* 583 F.Supp. 23 (S.D.Ga.1983); *Corcoran v. Lyle School Dist. No. 406,* 20 Wash.App. 621, 581 P.2d 185 (1978); *Osborne v. Stone,* 536 So.2d 473 (La.App.1988).

The board then contends that Arizona Board of Regents Ordinance § 7–207 (§ 7–207), promulgated pursuant to the board's authority set forth in A.R.S. § 15–1626, required Bowman to return his written contract prior to commencement of the academic year. It also contends that President Hughes was not lawfully empowered to disregard § 7–207, and therefore his "hold in abeyance" letter was unauthorized or *ultra vires,* citing *Murphy v. State,* 65 Ariz. 338, 368, 181 P.2d 336, 355 (1947); *Mohave County v. Mohave–Kingman Estates, Inc.,* 120 Ariz. 417, 421, 586 P.2d 978,

982 (1978). *See also Leland v. Heywood,* 197 Mont. 491, 643 P.2d 578 (1982).

The board further notes that "persons dealing with public officers are bound, at their peril, to know the extent and limits of their power and that no right can be acquired except that predicated upon authorized acts of such officers." *Pinal County v. Pomeroy,* 60 Ariz. 448, 455, 139 P.2d 451, 454–55 (1943). It also relies on *Leland v. Heywood,* in which the Montana court held that "college administrators ... have no authority to contract with faculty members on terms different than those approved by the Board of Regents." 643 P.2d at 581.

■ All of these arguments are grounded on the argument that ordinance § 7–207 requires that a written contract must be in force by a date certain. It provides:

§ 7–207. Acceptance of appointment form; standards of conduct

A. *The universities shall,* commencing not later than the completion of employment contracts for the academic year 1971–1972, *use as a standard employment form* the Acceptance of Employment document which supplements these ordinances as Appendix VII.

B. *The form shall be used in the employment of* vice-presidents, provosts, administrative officers, deans, assistant deans, directors, department heads, department chairman, *professors,* associate professors, assistant professors, instructors, and others who are employed to perform teaching services, including graduate assistants and associates. The universities may use the form prescribed in subsection B of this section in the employment of personnel other than those set forth in this subsection. (Emphasis added.)

Contrary to the board's assertion, ordinance § 7–207 does not require that the acceptance form be returned within a certain number of days or by a fixed date, or before an academic year begins. Rather it simply mandates the form of the contract. This is in stark contrast to A.R.S. § 15–536(A), the statute involved in *Walker v. Sierra Vista Unified School Dist.,*

which requires that a public school teacher sign and return the contract or accept in writing within 30 days after receipt of the contract or the offer of employment is deemed revoked.

By implication, the notice of appointment dated May 11, 1981, signed by President Hughes and sent with the acceptance form to Bowman acknowledges the non-mandatory requirement of § 7–207 by only *requesting* that the form be returned within ten days. Moreover, President Hughes' letter of July 1981 promises that he was making arrangements to provide Bowman with an appropriate hearing, and that the contract would be held in abeyance pending resolution of Bowman's challenge to his evaluation. This is a clear indication that at least the president of N.A.U. did not consider the return of the written contract within ten days to be a condition for acceptance of employment.

Various court decisions uphold the right of a school or college governing board to require a written acceptance of a teaching contract within a reasonable time prior to the commencement of an academic term to enable the board to employ sufficient numbers of teachers. *E.g., Walker v. Sierra Vista; Swick v. Seward School Bd.*, 379 P.2d 97 (Alaska 1963); *State ex rel. Cody v. Caldwell Parish School Bd.*, 215 La. 645, 41 So.2d 461 (1949). Although it is conceivable that the intent of § 7–207 was that a written acceptance form should be required prior to commencement of a term of employment, the ordinance does not so provide. The ordinance merely states that the form "shall be used in the employment" of various named personnel. The ordinance on its face does not invalidate President Hughes' statement that he would hold Bowman's contract in abeyance.

██ True, Dr. Cox's letters of August 19th and 20th do assert that failure to return the acceptance form will constitute an abandonment of the contract. However, whether Dr. Cox, who held a position subordinate to President Hughes, overrode President Hughes' authority to agree to hold the contract in abeyance or whether President Hughes had changed his inten-

tion to hold the contract in abeyance, are all questions of fact.

Further, the issue of whether Bowman reasonably relied on the promises in President Hughes' July 1981 letter in light of Dr. Cox's August 1981 letters is a factual issue that cannot be resolved on a motion for summary judgment. Whether Bowman's alleged reliance was reasonable is pertinent to determining whether Bowman abandoned his faculty position as a matter of law. Summary judgment therefore must be reversed.

Our decision that summary judgment must be reversed is based on principles of contract law and not on constitutional grounds. This case does not involve the right to a pre-termination hearing because Bowman's employment was not terminated. Bowman's controversy with the administration involved only his entitlement to a merit pay increase, a non-constitutional issue. We therefore do not decide whether the actions of the board which affected Bowman's employment touched upon constitutionally protected free speech principles or constitutional requirements of due process or equal protection with respect to a university's denial of merit pay increases to faculty members as a result of an internal evaluation process. *See, e.g., Berry v. Battey*, 666 F.2d 1183 (8th Cir.1981); *Doyle v. University of Alabama*, 680 F.2d 1323 (11th Cir.1982); *Kanter v. Community Consol. School Dist. 65*, 558 F.Supp. 890 (N.D.Ill.1982); *Mahaffey v. Kansas Board of Regents*, 562 F.Supp. 887 (D.Kan.1983). We reverse the summary judgment solely on the basis of the abandonment issue, which is a matter of contract law.

## APPELLEES' "CROSS–ASSIGNMENT OF ERROR"

In its answering brief and cross-appellants' opening brief, the board raises the following cross-issue:

Further by way of cross-assignment of error, and in support of the ultimate disposition of this action in the trial court, Appellees/Cross–Appellants submit that the trial court abused its discretion in setting aside the judgment dismissing El-

don Bowman's action without prejudice for failure to prosecute it diligently and that its decision in this regard should be reversed.

This issue arose because the trial court, after Bowman's complaint had been dismissed for failure to prosecute, set aside the dismissal. Although this issue is argued in that section of the brief entitled "Cross–Appellants' Opening Brief," this issue was not raised in the board's notice of cross-appeal, which challenged only the denial of its request for attorney's fees. Bowman argues that because the board did not raise this issue by cross-appeal, this court is without jurisdiction to address it on the merits.

Bowman bases his contention on *Walters v. First Federal Sav. & Loan Ass'n*, 131 Ariz. 321, 641 P.2d 235 (1982). In *Walters*, appellants appealed from a jury verdict in favor of appellee. Without filing a cross-appeal, appellee argued, as an alternative ground in support of the trial court's result, that appellants' claims were barred by the doctrine of collateral estoppel. The Arizona Supreme Court held that it could not address this ground as a cross-issue:

> In the absence of a cross-appeal, the appellee can defend only as to the arguments allowed in the trial court and cannot present *rejected claims* in an answering brief. *Maricopa County v. Corporation Commission of Arizona*, 79 Ariz. 307, 289 P.2d 183 (1955). Because [appellee] seeks to assert a defense which was not permitted in the trial court, a cross-appeal should have been filed pursuant to 17A A.R.S. Civil Appellate Procedure Rules, Rules 8(a) and 9(a).

*Walters*, 131 Ariz. at 324, 641 P.2d at 238 (emphasis added).

█ This language, if read broadly, would appear to require a cross-appeal to argue any alternative grounds in support of the judgment that the trial court had "rejected" or denied on the merits as part of its decision. However, such an interpretation would be inconsistent with long established case law allowing any cross-issue to be raised, without a cross-appeal, that would support the judgment for reasons supported by the record but "ignored" by the trial court. *See Santanello v. Cooper*, 106 Ariz. 262, 265, 475 P.2d 246, 249 (1970) (raising a cross-issue is "the most logical and just method" for an appellee to argue grounds in support of the judgment that do not appear in the order but were set forth in the motion; no cross-appeal is required); *Bryce v. St. Paul Fire and Marine Ins. Co.*, 162 Ariz. 307, 783 P.2d 246 (App. 1989); *Kalil Bottling Co. v. Burroughs Corp.*, 127 Ariz. 278, 619 P.2d 1055 (App. 1980). Such an interpretation would also be inconsistent with numerous cases that have held that an appellee is not entitled to cross-appeal from a judgment wholly in its favor on any grounds, because it is not an "aggrieved party." *See DeLozier v. Smith*, 22 Ariz.App. 136, 524 P.2d 970 (1974); *Aegerter v. Duncan*, 7 Ariz.App. 239, 437 P.2d 991 (1968).

Is there, then, a distinction between "ignored" grounds and "rejected" grounds? We believe not. Universally, authorities have logically refused to make a distinction between "rejected" grounds and "ignored" grounds in determining what can be raised as cross-issues in the absence of a cross-appeal:

> [E]ven if an appellee does not file a cross-appeal or cross-petition, he may defend the judgment in his favor with any argument that is supported by the record, whether it was ignored by the court below or flatly rejected. The classic statement of this principle appears in the opinion of Justice Brandeis, speaking for an unanimous Court in *United States v. American Railway Express Co.*, [265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087] in 1924:

>> [A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it

is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

9 J. Moore, *Moore's Federal Practice*, para. 204.11[3] at 4–47 (1989) (footnotes and citations omitted).

Professor Moore concludes from these principles:

Whether or not a cross-appeal must be taken depends upon whether the issues the appellee seeks to raise constitute an attack on the judgment below, which requires that a cross-appeal be taken, or are merely alternative arguments in support of the judgment, in which event a cross-appeal is not necessary.

*Id.* at 4–48. Courts, citing Professor Moore, have in addition, required that a cross-issue must not only be an alternative argument in support of the judgment, but must also constitute an issue "adequately presented" prior to appeal. *See generally Arlinghaus v. Ritenour*, 622 F.2d 629 (2d Cir.1980), *cert. denied*, 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980).

In 1955, the Arizona Supreme Court adopted the views of Justice Brandeis and Professor Moore by requiring a cross-appeal only when the appellee attempts "enlarging his own rights thereunder or of lessening the rights of his adversary." *Maricopa County v. Corporation Comm'n*, 79 Ariz. 307, 310, 289 P.2d 183, 185 (1955). However, this decision, which is the only authority cited for the holding in *Walters*, also used the broad language that, absent a cross-appeal, "the appellee can defend only as to the items allowed below and cannot present *rejected* claims." *Id.* (emphasis added).

In view of the reasoning of the most respected of authorities, we do not believe *Walters* intended that a cross-appeal is required for any ground "rejected" by the trial court but that a cross-issue may be designated for any ground "ignored," within the normal meaning of those words. In our opinion, a close reading of both *Maricopa County* and *Walters* requires a more logical rule.

In *Maricopa County*, the ground which the court required be raised by cross-appeal was a contention that an appeal from a commission's ruling was untimely filed, so the trial court had no jurisdiction to hear the matter. This was argued as an alternative ground to support the *result* the trial court reached in favor of appellee, but in actuality constituted an attack on the *judgment* itself, on a jurisdictional basis. Furthermore, the opinion does not indicate that the timeliness issue was even raised or ruled upon by the trial court in rendering the judgment. Similarly, in *Walters*, it was appellee's contention that all of appellants' claims in the trial court were barred by the doctrine of collateral estoppel (issue preclusion). This too was argued as an alternative ground to support the *result* the trial court reached in favor of appellee, but constituted an attack on the actual *judgment*, because it was an argument that the trial court need not reach the merits, even though on the merits the appellee prevailed. In *Walters*, the collateral estoppel argument was not even considered by the trial court.[2] The *Walters* opinion explicitly points out that the defense was not "permitted" by the trial court. 131 Ariz. at 324, 641 P.2d at 238. This court has previously distinguished the *Walters* decision on the basis that the rejected cross-issue in Walters was "barred from presentation in the trial court." *Arizona Public Serv. Co. v. Mountain States Tel. & Tel. Co.*, 149 Ariz. 239, 242, 717 P.2d 918, 921 (App. 1985). Thus, in both *Maricopa County* and *Walters*, the supreme court required cross-appeals only for claims that actually attacked the judgment appealed from and

---

2. Although the appellate decision does not so specifically state, a review of the record on appeal in *Walters* indicates that the issue of collateral estoppel was first raised by appellee in the trial court by a motion to amend filed two weeks before trial. The motion was denied as untimely and the trial court precluded any evidence going to this issue from being presented to the jury.

that involved grounds that had not been considered by the trial court in rendering the judgment at issue on appeal.

Professor Moore points out that many such "rejected" grounds that are required by courts to be raised by cross-appeals rather than as cross-issues are actually "forum defenses" that would support the result reached against appellant but in actuality attack the judgment in favor of appellee. 9 *Moore's Federal Practice, supra,* at 4–51. Thus, grounds that argue against timeliness of a motion or complaint, the lack of venue, an unasserted affirmative defense, or any basis attacking the jurisdiction or discretion of the trial court to render a judgment would be required to be raised by a cross-appeal because they are actually an attack on the judgment rendered. (This assumes, of course, that judgment was not actually rendered on the basis of these "forum defenses.") This is so because such grounds attack either the forum in which the judgment was rendered, or seek to expand or enlarge appellee's arguments on appeal by presenting issues which are not intrinsic to the merits of the judgment considered by the trial court.

We acknowledge that the prior case law distinguishing between issues that must be raised as either cross-issues or cross-appeals is confusing. *See* 1 *Arizona Appellate Handbook,* § 3.2.2.2 (2d ed. 1986). To clarify this, we summarize our analysis in a three-part rule. In the absence of a cross-appeal, an appellee may raise a cross-issue in its answering brief only when it meets these criteria:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal.

Issues that do not meet this test, assuming they are otherwise appealable, must be the subject of a timely notice of cross-appeal.

■ In this case, the ground urged as a cross-issue by the board, like the grounds argued in *Maricopa County* and *Walters,* is one required to be raised by cross-appeal. We reach this conclusion not because the trial court "rejected" appellees' argument that Bowman's complaint should have been dismissed for lack of prosecution, but because an argument that Bowman's complaint should have been dismissed for failure to prosecute is not an argument in support of the judgment. Rather, it constitutes an attack against the forum and thus against the merits of the judgment. Furthermore, this issue was not one raised or considered by the court in rendering this judgment, which was solely a ruling on the board's motion for summary judgment. The board neither raised the issue of reinstatement of the case after dismissal for lack of prosecution in that motion before Judge Cates, nor did it raise it in the motion for reconsideration before Judge Hall. The issue thus attacks the judgment, raises grounds not considered on the merits by the trial court in rendering the judgment, and enlarges appellees' theories of recovery in this appeal.

Because we hold that such a ground cannot be considered as a cross-issue, and because the board failed to raise this issue in its cross-appeal, this court is without subject matter jurisdiction to address the board's argument on the merits regarding the propriety of the trial court's reinstatement of the complaint. *See* Rule 9(a), Arizona Rules of Civil Appellate Procedure (cross-appeal must be filed within 20 days from date the notice of appeal is filed); *Butler Products Co., Inc. v. Roush,* 145 Ariz. 32, 699 P.2d 906 (App.1984) (failure to file within time limits of Rule 9 deprives an appellate court of jurisdiction).

### ATTORNEY'S FEES

Because we are reversing the trial court's summary judgment in favor of the

**560**

Board of Regents and President Hughes, we need not address appellees' cross-appeal from the trial court's denial of attorney's fees.

The judgment of the trial court is reversed and this matter is remanded for proceedings in accordance with this opinion.

CONTRERAS and KLEINSCHMIDT, JJ., concur.