798 P.2d 1382

**EXODYNE PROPERTIES, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**CITY OF PHOENIX, a political subdivision of the State of Arizona, and City of Phoenix Historic Preservation Commission, Defendants/Appellees.**

No. 1 CA–CV 88–421.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 25, 1990.

374

Lancy, Scult & Lazarus by David K. Jones, Phoenix, for plaintiff/appellant.

Roderick C. McDougall, City Atty. by Edward P. Reeder, Asst. City Atty., Phoenix, for defendants/appellees.

## OPINION

GRANT, Chief Judge.

This is an appeal from a denial by the City of Phoenix (the City) of an application by appellant Exodyne Properties, Inc. (Exodyne) for permission to demolish five buildings located within the City's Roosevelt Historic Preservation District. Exodyne substantively challenges the trial court's interpretation of the Phoenix Historic Preservation Ordinance (the Ordinance) and the trial court's award of partial attorney's fees. Because we find that the trial court incorrectly interpreted the Ordinance, we reverse and remand with directions that Exodyne be awarded the reasonable amount of attorney's fees requested.

## FACTS

The facts are undisputed. On January 9, 1987, Exodyne applied for a Certificate of Appropriateness for demolition of five structures within the Roosevelt Historic Preservation District. Pursuant to a request by the Historic Preservation Commission (the Commission), Exodyne submitted to the Commission a packet of additional information on February 13, 1987. On March 12, 1987, the Commission considered Exodyne's applications and ultimately voted to continue the matter until September 28, 1987, at which time the Commission denied the application.

On October 27, 1987, Exodyne filed a special action in superior court to compel the Commission to issue the Certificate of Appropriateness and the demolition permits. Such issuance, it contended, was required by section 910(j) of the Ordinance which provides: "If the HP Commission does not either approve or deny an application for a ... Certificate of Appropriateness within 90 days after the filing of a complete application, the application shall be deemed approved." Phoenix Historic Preservation Ordinance, § 910(j).

By minute entry dated January 21, 1988, the trial court found that Exodyne's application was complete on February 13, 1987, the date that the requested additional information was submitted. The trial court also found that Exodyne's application was deemed approved by operation of law 90 days thereafter, May 14, 1987. The court went on to hold, however, that the Commission's September 28, 1987, action, purporting to deny the application, "was legally tantamount to a reconsideration of the earlier deemed approval."

The court held that the denial resulting from the Commission's "reconsideration" was effective May 14, 1987, the date the earlier default approval became effective. The court further held that this denial implicated Section 911(d)(2) of the Historic Preservation Ordinance which provides, in pertinent part:

> If, after 12 months have expired following consideration by the HP Commission of the application for Certificate of Appropriateness, the owner decides not to preserve the structure, and no agreement has been made to purchase the property to preserve it, and the City has not initiated eminent domain proceedings to acquire the property, then the Historic Preservation Officer shall notify the Building and Safety Director that the permit to move or demolish the structure may be issued....

Phoenix Historic Preservation Ordinance, § 911(d)(2). Thus, the court held that the twelve-month period commenced on May 14, 1987, and that demolition could be prevented on or before May 14, 1988, if the City reached an agreement to purchase the property or initiated eminent domain proceedings. The City initiated eminent domain proceedings on February 18, 1988, well within the twelve-month period, and has since acquired the property. Final judgment was entered on May 24, 1988.

Although Exodyne requested attorney's fees totaling $20,348.50, pursuant to A.R.S. § 12–2030,[1] the trial court awarded

---

1. A.R.S. § 12–2030 provides:
   A. A court shall award fees and other expenses to any party other than this state or any political subdivision thereof which pre-

vails by an adjudication on the merits in a civil action brought by the party against the state or any political subdivision thereof to compel a state officer or any officer of any

fees of only $5,492.69. The trial court's reasoning in making this reduction is not entirely clear to this court.

Exodyne raises essentially one issue on appeal: Whether the trial court abused its discretion by awarding only partial attorney's fees. In order to decide this issue, however, the following threshold questions must first be resolved: (1) Did the trial court err in finding that the September 28, 1987, Commission action was a reconsideration of the earlier approval? and, (2) What amount accurately reflects reasonable attorney's fees pursuant to A.R.S. § 12-2030? and (3) Can that amount be reduced in the trial court's discretion to reflect the degree of success on the merits?

The City argues that Exodyne's entitlement to demolition permits, as determined by the trial court's interpretation of the Ordinance, is moot, since the City has already initiated eminent domain proceedings against the properties. The City also contends that the trial court should not have awarded *any* attorney's fees pursuant to A.R.S. § 12-2030 because Exodyne was not a prevailing party below and because Exodyne is not seeking mandamus relief.

## MOOTNESS

On February 18, 1988, after the trial court's January 21, 1988, minute entry, but before final judgment was entered on May 24, the City initiated eminent domain proceedings against the subject properties. The City argues that because it has now acquired the properties by eminent domain, Exodyne no longer has the right to demolish any structures on the properties, and that the issue of Exodyne's entitlement to demolition permits is therefore moot. Consequently, the City argues that we should dismiss that portion of Exodyne's appeal which challenges the trial court's interpretation of the Ordinance.

Although, generally this court will not decide moot questions or abstract propositions, exceptions to this rule exist where there is either an issue of great "public importance," *Camerena v. Department of Pub. Welfare,* 106 Ariz. 30, 470 P.2d 111 (1970), or an issue "capable of repetition yet evading review." *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973); *Odle v. Imperial Ice Cream Co.,* 11 Ariz.App. 203, 463 P.2d 98 (1970). Nevertheless, because we find that the amount of attorney's fees due Exodyne is not a moot issue, and further, that we must address the trial court's interpretation of the Ordinance in order to adequately determine the fee issue, we need not address whether one of these exceptions to the mootness doctrine applies. *See Contempo-Tempe Mobile Home Owners Ass'n v. Steinert,* 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App.1985).

The City is correct that the substantive issue of whether it is required to issue demolition permits is now moot, since resolution of the issue will not affect Exodyne's right to demolish structures on the subject properties. *See Board of Supervisors v. Robinson,* 105 Ariz. 280, 463 P.2d 536, *cert. denied,* 399 U.S. 913, 90 S.Ct. 2211, 26 L.Ed.2d 568 (1970). However, Exodyne no longer seeks to demolish the buildings; rather, it challenges the trial court's interpretation of the Ordinance solely for the purpose of showing that the trial court's apportionment of attorney's fees, which Exodyne alleges was based on the court's decision on the merits, was in error.

Exodyne's entitlement to attorney's fees is not an "abstract" question, but rather one which involves existing rights. Thus, review of the trial court's award of attorney's fees is not a moot issue, and is not made so simply because resolution of the issue may necessarily entail a review of the merits of the demolition-permit issue. *See, e.g., Smith v. Board of Walla Walla*

political subdivision thereof to perform an act imposed by law as a duty on the officer. B. As used in this section, "fees and other expenses" *includes the* reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, report, test or project found by the court to be necessary for preparation of the party's case, and reasonable and necessary attorney fees.

*County Comm'rs,* 48 Wash.App. 303, 306, 738 P.2d 1076, 1078 (1987) (court of appeals must reach merits of trial court's granting of writ of mandamus to determine the continuing controversy over the award of attorney fees); *LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 651 P.2d 839, 840 n. 1 (Alaska 1982) (which held that a reviewing court will not hear a moot case simply to determine who is the prevailing party for purposes of awarding costs and attorney fees), overruling *State Comm'r of Health & Human Services v. Seward Marine Servs., Inc.,* 612 P.2d 1010, 1012 n. 3 (Alaska 1980), and *Munroe v. City Council of Anchorage,* 545 P.2d 165, 170, *modified,* 547 P.2d 839 (Alaska 1976).

Our refusal to dismiss Exodyne's appeal of the trial court's interpretation of the Ordinance is supported by the decision in *Jay v. Kreigh,* 110 Ariz. 299, 518 P.2d 122 (1974), cited by both parties. In *Jay,* a group of citizens petitioned the Pima County Board of Supervisors to incorporate their community into the Town of Oro Valley. When their petition was denied, the plaintiffs filed an action for a writ of mandamus to compel the Board of Supervisors to order approval of the incorporation petition. In March of 1972, the trial court, by minute entry, ordered the Board to incorporate; however, the judgment was not signed until mid-June of that year. In the meantime, the City Council of Tucson annexed the territory, thereby preventing the board from incorporating.

This court held that the city's annexation deprived the Board of Supervisors of jurisdiction to declare Oro Valley an incorporated town. The supreme court reversed, holding the case was not moot:

> The matter was tried and determined, albeit by minute entry, before the City of Tucson attempted to defeat incorporation. Assuming that the Board of Supervisors had a duty to declare the Town of Oro Valley incorporated in the first place, the trial court had jurisdiction to order the Board of Supervisors to do what the Board ought to have done in the first place, and once the Superior Court acquired jurisdiction over the subject matter of the incorporation of Oro

Valley and parties thereto, the Tucson City Council could not oust the court of that jurisdiction by the annexation of territory within 6 miles of the new town.

*Jay v. Kreigh,* 110 Ariz. at 302, 518 P.2d at 125.

Similarly, in this case, the trial court issued its ruling before the City initiated eminent domain proceedings. Thus, the trial court properly considered the parties' relative rights under the Ordinance. Exodyne therefore has the right to appeal the attorney's fees award, even though it can no longer enforce its rights on the merits by demolishing the buildings.

## HISTORIC PRESERVATION ORDINANCE

■ The trial court concluded that Exodyne's application for a Certificate of Appropriateness was deemed approved by operation of law, pursuant to section 910(j) of the Historic Preservation Ordinance, on May 14, 1987, 90 days after the application was completed on February 13, 1987. Therefore, we conclude that as of May 14, 1987, Exodyne had a legal right to issuance of the Certificate of Appropriateness and, consequently, to demolition permits. *See, e.g., Boulder Corp. v. Vann,* 345 So.2d 272, 276 (Ala.1977) (planning commission's failure to act within the time and in manner mandated by legislature creates "clear legal right" to certificate of approval of petitioner's plat); *Vartuli v. Sotire,* 192 Conn. 353, 365–66, 472 A.2d 336, 344 (1984) (failure of zoning board to approve or disapprove plaintiff's application for building permit within statutorily mandated period resulted in automatic approval of the application, thereby divesting board of authority to later disapprove the application); and *Viking Constr. Co. v. Town Planning Comm'n,* 181 Conn. 243, 247–48, 435 A.2d 29, 32 (1980) (approval by operation of law creates clear legal right to issuance of certificate of approval of subdivision plan, and prevents subsequent disapproval of plan by zoning commission).

The trial court erred in holding that the September 28, 1987, Commission action

was a "reconsideration" of the earlier approval. If the City were allowed to reconsider an approval effective by operation of law, there would be nothing to prevent the City from "reconsidering" its decision *at any time,* thereby holding a permit applicant in limbo indefinitely. Such a holding would be contrary to the plain intent of section 910(j) of the Ordinance. *See generally,* Annotation, *Zoning: Construction and Effect of Statute Requiring That Zoning Application Be Treated as Approved If Not Acted On Within Specific Period of Time,* 66 A.L.R. 4th 1012, 1023 (1988) (statutes providing for automatic approval of permit, variance, and similar applications, when zoning boards fail to act within designated time periods, are intended to prevent zoning boards from unduly delaying their decisions, whereby "the developer is left in limbo, without any guidance on whether to go forward with the proposed activity.")

## ATTORNEY'S FEES

■ Exodyne argues that, due to the trial court's erroneous interpretation of sections 910(j) and 911(d)(2) of the Ordinance, the trial court improperly reduced the amount of Exodyne's attorney's fees. The City contends that the trial court erred in awarding *any* attorney fees to Exodyne because this was not a mandamus action, and because Exodyne was not a "prevailing party" within the meaning of A.R.S. § 12–2030.

Because the City failed to cross-appeal on these issues, we may consider them only to the extent that they support the actions of the trial court. *Madisons Chevrolet, Inc. v. Donald,* 109 Ariz. 100, 104, 505 P.2d 1039, 1043 (1973); *Hackin v. Gaynes,* 103 Ariz. 13, 16, 436 P.2d 127, 130 (1968). Despite several admonitions by the court to this effect at oral argument, counsel for the City insisted on challenging the trial court's award on these grounds. Consequently, we find it necessary to review Arizona case law concerning the relationship between *cross-issues* and *cross-appeals:*

[A] party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below.

. . . . .

*Bowman v. Board of Regents,* 162 Ariz. 551, 557, 785 P.2d 71, 77 (App.1989) (quoting 9 J. Moore, *Moore's Federal Practice,* ¶ 204.11[3] at 4–47 (1989)).

In *Bowman,* this court set out three requirements which must be met in order for an appellee to raise a cross-issue in its answering brief without having filed a cross-appeal:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal.

*Id.* at 559, 785 P.2d at 79.

The City's arguments here are not "in support of the judgment." Indeed, the City argues directly *against* the judgment by asserting, through two separate theories, that the trial court should not have awarded *any* attorney's fees at all. Consequently, since the City failed to satisfy all three parts of the *Bowman* test, this court is without subject matter jurisdiction to address the City's challenges of the trial

court's award of attorney's fees to Exodyne.[2] *Id.*

■ We now address Exodyne's appeal of the attorney's fees award. The trial court awarded Exodyne attorney's fees of $5492.69, pursuant to A.R.S. § 12–2030.[3] Exodyne initially requested attorney's fees totalling $20,348.50. The City objected to $1387.00 of these charges as excessive, since they were based on consultations between attorneys in the law firm representing plaintiff. The City also objected to $2317.50 in charges incurred in the preparation of plaintiff's motion to reconsider. Thus, the City argued below that, if Exodyne were entitled to any award, a "reasonable" attorney's fee required reduction of the amount requested by $3704.00, to $16,-644.50.

The City further argued below that if attorney's fees were appropriate, the court should award only $5492.69, representing one-third of the $16,644.50 figure which the City considered reasonable.[4] The City reached this figure through the following analysis. If the City effectively denied Exodyne's application for a Certificate of Appropriateness on September 28, 1987, this action would have activated the twelve-month period under section 911(d)(2) of the Ordinance. Under that provision, if the City had not initiated eminent domain proceedings against the subject property within one year (by September 28, 1988), it would be required to issue demolition permits. However, because the court actually found that Exodyne would be entitled to demolition permits on May 14, 1988 (one

year from the date Exodyne originally claimed section 910(j) required the City to issue the permit), rather than on September 28, 1988 (one year from the date of denial of Exodyne's application for a Certificate of Appropriateness), the court's ruling essentially reduced Exodyne's waiting period for permits by approximately four months, or one third of a year. Consequently, the City argued that Exodyne's entitlement to attorney's fees should be reduced by two-thirds.

The trial court apparently accepted the City's position. It awarded $5492.69 in attorney's fees and cited *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983), on which the City had relied in arguing for the two-thirds reduction in fees based on the degree of Exodyne's success below.[5]

Because Exodyne succeeded in reducing the time period in which the ordinance mandated issuance of demolition permits by only four months, the trial court held that Exodyne was only partially successful in forcing the City to issue construction permits on May 14, 1988. Thus, the court reduced Exodyne's attorney's fees by two-thirds.

The logic of the court's reasoning is flawed. If the degree of Exodyne's success is to be measured at all, the operative date should be May 14, 1987, the date on which the City was required to *immediately* issue demolition permits, not September 28, 1988, the date the trial court held that Exodyne would have been entitled to the

---

**2.** Although we need not consider the other two criteria of the *Bowman* test, since all three parts must be met, we note that the City also clearly failed to satisfy the third branch of the test. By challenging the trial court's $5492.69 award to Exodyne, and by arguing that A.R.S. § 12–2030 did not authorize the award of any fees in this case, the City failed to meet the *Bowman* test's requirement that the cross-issue not result in enlargement of appellee's rights or lessening of appellant's rights.

**3.** *See* note 1.

**4.** We note that one-third of $16,644.50 is $5548.17—not $5492.69, as the parties suggest. Moreover, if the amount were prorated exactly from May 14 to September 28 (or 137 days) the

award should be $6247.39. However, this discrepancy does not affect our decision.

**5.** Specifically, the trial court stated:

The Court finds that Plaintiff is entitled to an award of fees under A.R.S. section 12–2030. The Court disagrees, however, with Plaintiff's interpretation of the statute. Although an award of fees is mandatory, only those fees which were reasonable and necessary to achieve the result actually obtained are awardable. After balancing the fees claimed, the results achieved, and the requirements of *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983), the Court finds that a reasonable attorneys' fee is $5,492.69.

permit, had the court not given the City's denial retroactive effect.

Nonetheless, because we hold that the trial court erroneously interpreted the Ordinance by holding that the September 28 Commission meeting was a reconsideration of the prior approval, we need not rest our decision on the flawed logic of the trial court's reduction of attorney's fees. Nor are we required to address Exodyne's claim that the trial court erroneously interpreted *Schweiger v. China Doll Restaurant, Inc.* We hold solely that the trial court should have found Exodyne entirely successful on the merits, and therefore should not have proportionately reduced the amount of Exodyne's recoverable attorney's fees.

■ We now address the trial court's reduction of the amount of attorney's fees from the $20,348.50 requested by Exodyne to $16,644.50, which the trial court then further reduced apparently to reflect its perception of Exodyne's success on the merits. The decision to award attorney's fees pursuant to some statutes is purely at the discretion of the trial court. *See, e.g.,* A.R.S. § 12–341.01 ("In any contested action arising out of a contract, express or implied, the court *may* award the successful party reasonable attorney's fees." (emphasis added)). Cases construing such statutes emphasize this discretion when it exists. *See Autenreith v. Norville,* 127 Ariz. 442, 444, 622 P.2d 1, 3 (1980) ("Since ... the statute providing for attorney's fees is permissive, the awarding of attorney's fees was a matter within the discretion of the trial court."); and *Pioneer Roofing Co. v.`Mardian Constr.,* 152 Ariz. 455, 465–67, 733 P.2d 652, 661–63 (App.1986) (award of attorney's fees under A.R.S. § 12–341.01 is discretionary with the trial court, and if there is any reasonable basis for the exercise of such discretion, its judgment will not be disturbed).

In this case, however, the decision whether to award reasonable attorney's fees is not left to the trial court's discretion. A.R.S. § 12–2030 provides that "[a] court *shall* award fees and other expenses [including] *reasonable* and necessary attorney fees." (Emphasis added.) Unlike cases based upon A.R.S. § 12–341.01, pursuant to which the court *may* award attorney's fees, trial courts are required to award reasonable attorney's fees to prevailing parties under A.R.S. § 12–2030. Since we have already found Exodyne to be entirely successful on the merits, we now hold that the trial court did not abuse its discretion by failing to find the full amount requested by Exodyne to be "reasonable and necessary." Even though the trial court *must* award reasonable fees under A.R.S. § 12–2030, it may still make a determination of reasonableness. We approve the award of $16,644.50 in attorney's fees.

## ATTORNEY'S FEES ON APPEAL

■ Exodyne requests an award of attorney's fees on appeal. Because we reverse the trial court's interpretation of the Phoenix Historic Preservation Ordinance and its award of only partial attorney's fees, we hold that Exodyne is a prevailing party within the meaning of A.R.S. § 12–2030. Therefore, we grant Exodyne's request for reasonable attorney's fees on appeal in an amount to be determined following submission of an appropriate statement of costs filed in accordance with Rule 21, Arizona Rules of Civil Appellate Procedure.

## CONCLUSION

We hold that the trial court erroneously interpreted the Phoenix Historic Preservation Ordinance when it concluded that the September 28 Commission action was a reconsideration of the prior approval by operation of law. Consequently, the award of attorney's fees based on the court's ruling must be reversed. We therefore remand the case with directions that judgment be entered for Exodyne and fees be awarded in the amount of $16,644.50.

CLABORNE, P.J., and BROOKS, J., concur.