833 P.2d 32

In the Matter of $70,269.91 IN U.S. CURRENCY, and One 1985 Ford Van, Utah License #6701BR, VIN 1FDDE14H5FHC11452.

**STATE of Arizona, Appellant,**

v.

**Robert Victor BENSON and Gary C. Benson, Claimants–Appellees.**

No. 1 CA–CV 91–165.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 12, 1991.

Reconsideration Denied June 1, 1992.

John Verkamp, Coconino Co. Atty. by Richard S. Vihel, Deputy Co. Atty., Flagstaff, for appellant.

Lee Edmond, Flagstaff, for claimants-appellees.

Grant Woods, Atty. Gen. by Cameron H. Holmes, Asst. Atty. Gen., Phoenix, for amicus curiae.

## OPINION

McGREGOR, Judge.

The State of Arizona appeals from the trial court's dismissal of its civil *in rem* forfeiture action. This appeal, which comes to us in a unique procedural posture, raises three issues. The first is whether the state's release of the *res* to the claimants, in violation of the trial court's order staying release, deprived this court of jurisdiction. We hold it did not. The second is whether the trial court's order dismissing appellees' claim to the *res* deprived them of standing to proceed. We conclude the order did deprive claimants of standing. The final issue is whether the trial court abused its discretion by refusing to allow claimants to amend their claim to the *res*. We hold the trial court did abuse its discretion and therefore remand this action for further proceedings.

### I.

On May 25, 1990, the state filed a notice of pending forfeiture making uncontested forfeiture available. *See* Ariz.Rev.Stat. Ann. (A.R.S.) §§ 13–4307 and 13–4309. The state, seeking to forfeit a 1985 Ford van and $70,269.91 in cash, alleged the following facts. On May 5, 1990, a police officer stopped a van owned by Gary Benson for speeding. Kenneth Benson was the driver and his brother, Robert Benson, was a passenger. During the stop, the officer smelled the odor of burnt marijuana coming from the van. The officer searched the van and found the remains of a marijuana cigarette and the cash. He also detected the odor of fresh marijuana in the van. Robert later told officers that he and Kenneth had driven the van to Tucson to

buy marijuana to resell in Utah but had been unable to make a purchase. He allegedly admitted that he, Kenneth and Gary Benson were "members of a marijuana distribution enterprise."

Both a criminal action and a civil forfeiture action arose from the police stop of the van. In the criminal action, the state filed charges against Kenneth and Gary Benson. The defendants, alleging all evidence garnered from the arrest resulted from an illegal search and seizure, filed a motion to suppress that evidence. The trial court granted defendants' motion on October 2, 1990.

In the forfeiture action, appellees Robert and Gary C. Benson (Bensons)[1] filed a verified petition for remission or mitigation on June 25, 1990. *See* A.R.S. § 13-4309.2. The petition asserted that Robert owned the cash and Gary owned the van. On July 23, 1990, the state filed a declaration of forfeiture declaring the property to be forfeited pursuant to A.R.S. § 13-4309.3.(b). As permitted by A.R.S. § 13-4309.3.(c), Bensons filed a verified claim to the cash and van on August 22, 1990. On August 29, 1990, the state filed its verified complaint for forfeiture.[2] *See* A.R.S. § 13-4311.

In its forfeiture complaint, the state asserted the van and cash were subject to forfeiture because "they were used or were intended to be used to facilitate the commission of possession of marijuana for sale and transportation of marijuana for sale in violation of A.R.S. Section 13-3405 which are racketeering offenses as defined by A.R.S. Section 13-2301(D)(4)." On September 5, 1990, the state moved to strike Bensons' claim to the *res* for failure to comply with A.R.S. § 13-4311.E, subsections 4, 5 and 6. In response, Bensons argued, *inter alia*, that the court should allow them to amend their claim if the court found it deficient.

On October 9, 1990, Bensons, relying upon the theory of collateral estoppel, moved to suppress all evidence in the forfeiture action that the court already had suppressed in the criminal action. On January 22, 1991, the trial court granted the state's motion to strike Bensons' claim because it did not fulfill the requirements of A.R.S. § 13-4311.E. Although no claim to the *res* remained as a result of the court's order, the court nevertheless simultaneously granted Bensons' motion to suppress evidence previously suppressed in the criminal action.

Despite the order dismissing their claim, three days later, on January 25, 1991, Bensons filed a "motion for dismissal of the forfeiture proceedings, return of the seized property and writ of mandate." On February 15, 1991, the court granted Bensons' motion to dismiss the proceedings. On February 28, 1991, the court signed and entered formal orders dismissing the action and requiring immediate return of the *res* to Bensons. That same day, the state filed a motion for reconsideration and a notice of appeal. On March 5, 1991, the court issued the following order:

> The Court would deny the Motion for Reconsideration, but would temporarily stay the Court's Order of February 28, 1991 until it has had an opportunity to review the Response to the Motion for Stay.

On March 6, 1991, Bensons' counsel, who was then unaware of the March 5 stay order, obtained the release of the property from its custodian, the Department of Public Safety. On April 29, 1991, the trial court ordered Bensons to hold the property in trust for the state pending the outcome of this appeal.

## II.

■ Bensons first assert that the state's release of the property divested this court

---

1. Kenneth Benson is not a party to the forfeiture action.

2. The court file indicates the complaint was not filed until January 28, 1991. We reject Bensons' argument that the trial court should have dismissed the action because of the state's failure to file its complaint in a timely manner. Bensons concede they were timely served with the complaint and filed an answer in response. Consequently, Bensons were not prejudiced by the late filing, which apparently resulted from the court's clerical error.

of jurisdiction and that this court consequently must dismiss the state's appeal. For support, Bensons rely upon *In the Matter of One Hundred Thirteen Thousand Eight Hundred Eighty–Eight Dollars in U.S. Currency*, 168 Ariz. 229, 232, 812 P.2d 1047, 1050 (App.1990). In that decision, we held that release of the *res* involved in an *in rem* forfeiture action from the actual or constructive control of the court ends the court's *in rem* jurisdiction. That general rule, however, is subject to exceptions. A court does not lose jurisdiction if release of the *res* is obtained "accidentally, fraudulently or improperly." *Id. (citing, inter alia, The Rio Grande*, 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1874)). Bensons assert that we need not consider whether the state's release of the *res* in this matter was accidental, fraudulent or improper. They contend the question is immaterial here because, since none of the parties had notice of the court's order staying the release, the stay was not in effect at the time the property was released. We disagree.

■ As a general rule, an order takes effect when it is made or signed by the court. *See, e.g., Duclos v. United States Fire Ins. Co.*, 417 So.2d 40, 41 (La.App. 1982); 60 C.J.S. *Motions and Orders* § 65b at 112 (1969). *See also* 56 AM.JUR.2d *Motions, Rules and Orders* § 39 at 33 (1971). Nothing in the law of Arizona exempts the order staying release of the property from the operation of this general principle.[3] For purposes of retaining *in rem* jurisdiction, the trial court's order temporarily staying its release order was effective when made, on March 5, 1991. Therefore, the stay was in effect on March 6 when the state released the property.[4]

■ Release of the *res* in violation of the stay order brings this action within the ambit of *Rio Grande*. Although the release was neither fraudulent nor accidental, the release was "improper" because it violated the trial court's stay order. Release of the *res* therefore did not deprive this court of jurisdiction.

### III.

The state argues that the trial court's order striking Bensons' claim for failure to comply with statutory requirements deprived Bensons of standing to contest the forfeiture. Therefore, the state concludes, the trial court erred in later considering and granting Bensons' motions to suppress evidence and to dismiss the action. We agree.

■ To contest a forfeiture action, one must be a party to the action and have standing. *See State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 169 Ariz. 156, 817 P.2d 960 (App.1991). In a civil forfeiture action, one acquires standing by alleging an interest in the property. *See United States v. Fifteen Thousand Five Hundred Dollars*, 558 F.2d 1359, 1360 (9th Cir.1977). Under Arizona statutes, an owner or interest holder in property subject to forfeiture alleges an interest by filing a claim against the property. A.R.S. § 13–4311.D. The claim must include the elements set forth in A.R.S. § 13–4311.E.[5]

---

3. Some orders must be served to be effective. For example, Rule 5, Ariz.R.Civ.Pro., requires service of every order "required *by its terms* to be served." (Emphasis added.) Also, under Rule 65(h), Ariz.R.Civ.Pro., injunctions and restraining orders are effective only upon "actual notice of the order by personal service or otherwise." The stay order did not, by its terms, require service, nor was it an injunction.

Rule 77(g), Ariz.R.Civ.Pro., directs the clerk of the superior court to mail all minute entries to all parties and to mail notice of the entry of a judgment to all parties not in default for failure to appear. That rule does not, however, predicate effectiveness of the order upon receipt by a party. *See Park v. Strick*, 137 Ariz. 100, 669 P.2d 78 (1983).

4. The stay order applied to both the van and the cash. While the state moved to stay the release only of the cash, the court did not grant that motion. Instead, it *sua sponte* stayed the entire order pending consideration of Bensons' response.

5. A.R.S. § 13–4311.E provides:
   E. The claim shall be signed by the claimant under penalty of perjury and shall set forth all of the following:
   1. The caption of the proceeding as set forth on the notice of pending forfeiture or complaint and the name of the claimant.
   2. The address at which he will accept future mailings from the court or attorney for the state.

Once the owner or interest holder files a proper claim, he becomes a "claimant" and is entitled to a hearing to adjudicate the validity of his interest. A.R.S. § 13–4311.D and J.

■ The language of A.R.S. § 13–4311.E mandates that a claim *shall* set forth the information identified in subsections 1 through 8 of the statute. Because Bensons' claim failed to conform with A.R.S. § 13–4311.E, subsections 4, 5 and 6, the trial court correctly struck the claim. Once the court struck their claim, Bensons no longer had standing to litigate issues in the forfeiture action. *See United States v. U.S. Currency in the Amount of $103,- 387.27*, 863 F.2d 555, 560–61 (7th Cir.1988) (claimants lost statutory standing to contest forfeiture when district court struck their claim of ownership); *In The Matter of the Forfeiture of $3,000.00 United States Currency*, 164 Ariz. 120, 121 n. 1, 791 P.2d 646, 647 n. 1 (App.1990) (appellant lost standing to contest forfeiture after court struck his petition for remission of forfeiture).

### IV.

Our conclusion that Bensons lost standing when the court struck their claim does not, under the circumstances of this action, end our inquiry. The trial court also denied Bensons' request that they be permitted to amend their claim. We therefore next consider the circumstances under which a trial court should allow claimants to amend their claim to the *res* of a forfeiture action.

■ Ownership claims in forfeiture actions must satisfy two primary substantive concerns. First, the claimant must claim and verify a specific property interest. *See Baker v. United States*, 722 F.2d 517, 519 (9th Cir.1983). The claim must be verified on oath or solemn affirmation because

"[t]he danger of false claims in these cases is substantial." *Id.; United States v. U.S. Currency In the Amount of $103,387.27*, 863 F.2d at 559. Second, the claimant must properly and timely file the claim to notify the government and the court "that the claimant is entitled, by virtue of his sworn claim to the property, to join the action and be heard." *United States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir.1985).

■ Bensons' claim as filed satisfied these substantive concerns. Bensons timely filed their claim with the court and included sworn statements of Robert and Gary Benson asserting ownership of the subject property. These sworn statements, and the state's failure to contest Bensons' ownership, effectively eliminated any danger that their claims were false. In fact, at oral argument the state conceded that no issue exists as to whether Bensons owned the property. Furthermore, the claim clearly informed the court and the state of Bensons' interest and their intent to contest the forfeiture.

■ Bensons assert that, because their claim satisfied basic substantive requirements, their admitted failure to supply all the information required by A.R.S. § 13–4311.E is excused. We do not agree. The legislature has defined, in explicit terms, the elements needed to assert a claim in a forfeiture action, and this court must enforce the plain language of the statute. *State v. Ramos*, 155 Ariz. 468, 469–70, 747 P.2d 629, 630–31 (App.1987).

■ We also conclude, however, that when a claimant, after filing a claim that substantially complies with A.R.S. § 13–4311 and satisfies basic substantive concerns, requests an opportunity to amend the claim, the court should consider permitting the owner or interest holder to amend

3. The nature and extent of the claimant's interest in the property.
4. The time, transferor and circumstances of the claimant's acquisition of the interest in the property.
5. The specific provisions of this chapter relied on in asserting that it is not subject to forfeiture.

6. All facts supporting each such assertion.
7. Any additional facts supporting the claimant's claim.
8. The precise relief sought.

the claim to correct technical inadequacies. In determining whether to permit amendment, the court should consider the following factors: (1) whether the claimant advised the court and government of his interest in the property before the claim deadline; (2) whether allowing the amendment would prejudice the government; and (3) whether the claimant has made a good faith effort to comply with the statutory filing requirements. *See U.S. Currency in the Amount of $103,387.27*, 863 F.2d at 561 (trial court abused its discretion in failing to consider these factors before denying claimants an extension of time to amend an improperly verified claim).

A trial court should exercise its discretion to grant a claimant time to amend a technically deficient claim when "the goals underlying the time restriction and the verification requirement are not thwarted." *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir.1985). The goal of the time limit is "to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." *Id.* Granting the claimant additional time to perfect his claim does not thwart this policy where the "claimant has made known to the court and the government his interest in the subject property ... before the deadline set for the filing of a proper claim has passed...." *Id.*

■ In this instance, consideration of the relevant factors indicates the trial court should have allowed Bensons an opportunity to correct the inadequacies of their claim. The state does not dispute that Bensons notified it and the court of their interest in the property before the claim deadline. In addition, the state does not allege it would be prejudiced by allowing Bensons to amend their claim. Finally, Bensons established a good faith basis for their failure to comply with the statute. Although we do not accept Bensons' conclusion that compliance with the statute was excused because none of the omissions cast doubt upon their interest in the property or acted to prejudice the court or the government, we find no lack of a good faith effort to comply with statutory filing requirements.

■ The state also asserts that, even if amendment were otherwise appropriate, the court could not permit additional time to amend the claim because the forfeiture statute provides that "[n]o extension of time for the filing of a claim may be granted." A.R.S. § 13–4311.F. The statutory provision clearly limits a court's authority to extend the time for the initial *filing* of a claim; the provision, however, does not deprive a trial court of discretionary power to grant a claimant additional time to perfect a timely claim that is in substantive, but not technical, compliance with A.R.S. § 13–4311.E.

We express no opinion on the question whether Bensons can satisfy the statutory requirements. Given the circumstances, however, we conclude the trial court abused its discretion in refusing to grant Bensons an extension of time to amend their claim to try to comply with A.R.S. § 13–4311.E.

## V.

Finally, the state argues that Bensons' failure to raise by way of cross-appeal the issue whether the trial court abused its discretion in failing to grant them time to amend their claim deprives this court of jurisdiction to consider that issue. *See Bowman v. Board of Regents*, 162 Ariz. 551, 785 P.2d 71 (App.1989). We disagree.

■ In *Bowman*, this court established a three part test to determine which cross-issues an appellee may raise in the absence of a cross-appeal. We observe, as a preliminary matter, that *Bowman* neither requires nor approves robotic application of the test set out. In this case, to require Bensons to cross-appeal from an entirely favorable judgment would be not only unfair, but also inconsistent with the established principle that "an appellee is not entitled to cross-appeal from a judgment wholly in its favor on any grounds, because it is not an 'aggrieved party.'" *Id.* at 557, 785 P.2d at 77.

Applying the *Bowman* test, we reach a conclusion consistent with that established principle. An appellee may raise an argument as a cross-issue if it fulfills the following criteria:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal.

*Id.* at 559, 785 P.2d at 79.

Bensons do not attack the judgment of the court. The trial court considered and rejected Bensons' request that they be permitted to amend their claim. Furthermore, our ruling in Bensons' favor on this issue will result neither in an enlargement of their rights nor a diminution of the state's rights. Indeed, our decision actually deprives Bensons of the full relief afforded by the trial court. That court suppressed the evidence needed by the state to establish forfeiture and granted Bensons' motion to dismiss the action. Because Bensons lacked standing to bring those motions, the court's rulings on the motions are of no effect under our decision. We merely remand the action to the trial court with instructions to allow the Bensons to amend their claim to comply with the statute if they are able to do so.

## VI.

For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings in accordance with this opinion.

GERBER, P.J., and MELVYN T. SHELLEY, J., Retired, concur.

NOTE: Retired Judge MELVYN T. SHELLEY was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art 6, § 20, and A.R.S. § 38–813.