884 P.2d 687

David P. WOHLSTROM, Petitioner,

v.

The Honorable Robert BUCHANAN, a Judge for the Superior Court of the State of Arizona, County of Pima, Respondent,

State of Arizona, Real Party in Interest.

No. CV–92–0316–PR.

Supreme Court of Arizona.

Nov. 3, 1994.

Stephen D. Neely, Pima County Atty. by Thomas J. Rankin, Tucson, for respondent the State.

Hirsh, Davis, Walker & Piccarreta, P.C. by Michael Piccarreta, Jefferson Keenan, Tucson, for petitioner David Wohlstrom.

Grant Woods, Atty. Gen. by Cameron Holmes, Phoenix, amicus curiae.

Brian Rademacher for amicus curiae Arizona Attorneys for Criminal Justice.

## OPINION

ZLAKET, Justice.

On November 11, 1991, a Drug Enforcement Administration agent informed Tucson Airport Authority (TAA) police officers that petitioner David Wohlstrom, suspected of trafficking in narcotics, would be arriving from Dallas–Fort Worth. When petitioner got off the plane carrying two bags, TAA officers approached and asked if they could search his luggage. Wohlstrom claims he did not give them permission. Nevertheless, the officers held the luggage until a narcotics detection dog could inspect it. When the canine alerted positively on one of the bags, the officers repeated their request to search. Wohlstrom again declined. He left the airport when they continued to detain the bag. The officers thereafter obtained a telephonic search warrant and seized the bag's contents, including $127,000 in currency. No drugs were found.

The state initiated forfeiture proceedings pursuant to A.R.S. §§ 13–4301 to 13–4315. Petitioner filed a timely claim, which the state moved to strike because it did not comply with § 13–4311(E). That statute requires a claim to be "signed by the claimant under penalty of perjury" and to set forth, in part:

3. The nature and extent of the claimant's interest in the property.

4. The time, transferor and circumstances of the claimant's acquisition of the interest in the property.

The court granted the state's motion to strike, but permitted Wohlstrom to amend his claim. He then alleged the following:

2. ... The United States Currency in the amount of $127,000.00 which is the subject matter of this case is the personal property of Mr. Wohlstrom. The currency belongs to him, and was taken from his possession on November 11, 1991.

3. Claimant acquired the U.S. Currency that is the subject matter of this case in Philadelphia, Pennsylvania, earlier in the day on which it was seized, November 11, 1991. Claimant contends that any additional information concerning the circumstances of the acquisition of his property is protected under the Fifth Amendment to the United States Constitution, and Article 2, § 10 of the Arizona Constitution.

On April 20, 1992, the trial court struck the amended claim and held that because Wohlstrom had not complied with § 13–4311(E) he lacked standing to challenge the proceeding. There were no other claimants to the funds.

On June 5, 1992, Wohlstrom filed a petition for special action in the court of appeals, asserting that the statutory requirements violated his privilege against self-incrimination. The court of appeals declined jurisdiction. Also during this time, the state filed an application for an order of forfeiture. On June 18, 1992, the trial court made a determination of probable cause and ordered the property forfeited.

Wohlstrom argues that A.R.S. § 13–4311(E) violates the Fifth Amendment to the United States Constitution and article 2, section 10 of the Arizona Constitution by forcing a claimant to choose between invoking the privilege against self-incrimination and contesting a forfeiture. He contends that his assertion of the privilege has "cost him not only his property, but also any opportunity to vindicate his constitutional rights to be free from unreasonable searches and seizures, as well as his right not to have property taken from him without due process of law."

Moreover, petitioner argues that requiring him to make such a choice is unwarranted because he should be able to acquire standing without disclosing what he views as potentially incriminating and irrelevant information. Under these particular facts, we agree. However, because there may be times when a claimant needs to provide further information supporting the legitimacy of his or her claim, we decline petitioner's invitation to strike down the statute as unconstitutional on its face.[1]

■ "[A] party claiming the Fifth Amendment privilege should suffer no penalty for his silence...."[2] *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1087 (5th Cir.1979) (citing *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967)). The United States Supreme Court has defined "penalty" as "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack*, 385 U.S. at 515, 87 S.Ct. at 628. Further, the Court has held that "automatic" economic sanctions for invoking the privilege satisfy this definition and thus are forbidden. For instance, in *Spevack*, the Court ruled that an attorney could not be disbarred for refusing, on Fifth Amendment grounds, to produce evidence or testify at a disciplinary hearing. *Id.* at 519, 87 S.Ct. at 630. And, in *Lefkowitz v. Cunningham*, it held that an officer in a political party could not be made to forfeit his position because he exercised the privilege and refused to waive immunity in grand jury proceedings. 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977);

see also *Lefkowitz v. Turley*, 414 U.S. 70, 84–85, 94 S.Ct. 316, 326, 38 L.Ed.2d 274 (1973) (forcing contractors to choose between waiving immunity and doing business with state violates the Fifth Amendment). The sanction, however, must be the sole reason for the loss. For instance, in *Baxter v. Palmigiano*, the Court ruled that a prisoner's silence in a disciplinary hearing could be used against him because any punishment had to be based on more than his assertion of the privilege. 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976). It was necessary that there also be substantial evidence of the prisoner's underlying violation.

■ Here, by invoking his right against self-incrimination, petitioner lost the ability to intervene in the proceedings, virtually assuring a forfeiture. *See State v. Benson*, 172 Ariz. 15, 19, 833 P.2d 32, 36 (Ct.App.1991) (only those who file claims may contest forfeiture). In our view, this effectively constituted an "automatic" economic sanction. Amicus argues that because the state still had to show probable cause, petitioner did not really lose anything. Few who are familiar with the process would agree. Because no one was present to challenge the state's case and petitioner had no chance to prove a forfeiture exemption under § 13–4304(3), this proceeding was essentially *ex parte*. And, as any lawyer knows, it is considerably easier to prevail in an *ex parte* matter than in a contested one. *See United States v. James Daniel Good Real Property*, —— U.S. ——, ——, 114 S.Ct. 492, 502, 126 L.Ed.2d 490

1. Petitioner also asks that we invalidate the statute because it unconstitutionally shifts the initial burden of proof from the state to him. Since we now hold that he has standing, and that this forfeiture proceeding should go forward in a normal fashion, we need not reach this question.

2. Amicus argues that it makes a difference whether forfeitures are civil or criminal in nature because "[t]he Fifth Amendment does not operate to prevent adverse consequences in civil forfeiture cases." While some courts have allowed a party's assertion of the privilege to result in negative consequences, this determination generally has not depended upon whether a case was civil or criminal, but upon the unique facts of each matter. Furthermore, it is well established that a party may invoke the Fifth Amendment in any proceeding, *see State v. Ott*, 167 Ariz. 420, 425, 808 P.2d 305, 310 (Ct.App.1990) (quoting

*Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973)), as long as he or she faces a realistic threat of criminal prosecution in which the information could be adversely used. *See State v. Verdugo*, 124 Ariz. 91, 92, 602 P.2d 472, 473 (1979). The petitioner faced such a risk here; therefore, whether the instant proceedings are civil or criminal is irrelevant. It should be noted, however, that we do not intend by our ruling to depart from the principle that in civil cases, fact finders are entitled to draw negative inferences against those who assert Fifth Amendment rights against self-incrimination. *Baxter v. Palmigiano*, 425 U.S. 308, 317–18, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976); *Montoya v. Superior Court*, 173 Ariz. 129, 131, 840 P.2d 305, 307 (Ct.App.1992) (citing *Buzard v. Griffin*, 89 Ariz. 42, 48, 358 P.2d 155, 158 (1960)).

(1993) (*ex parte* proceedings offer little protection to owners; adversarial hearings are necessary to bring about neutral decision-making, especially where government has direct pecuniary interest); *United States v. All Assets of Statewide Auto Parts, Inc.*, 971 F.2d 896, 905 (2d Cir.1992) (disapproving of *ex parte* hearings in forfeiture cases because of their lesser constitutional protections).

Furthermore, even in the unlikely event that the state failed to meet its burden, the property would not necessarily have been returned to petitioner. A.R.S. §§ 13–4311(L) and 13–4314(E) provide for automatic recovery only by successful claimants.[3] Equally significant is the fact that as a non-party, petitioner could not appeal any finding.

■ Striking Wohlstrom's claim is analogous to dismissing a cause of action. We agree with the Ninth and Fifth Circuits that, in most instances, such a sanction for invoking the privilege is too costly. *Wehling*, 608 F.2d at 1088 (plaintiff's refusal on Fifth Amendment grounds to respond to interrogatories did not warrant dismissal); *Campbell v. Gerrans*, 592 F.2d 1054, 1058 (9th Cir. 1979) (same). Thus, we find that the trial court impermissibly forced petitioner to choose between "surrendering his constitutional privilege and forfeiting property." *State v. Ott*, 167 Ariz. 420, 427, 808 P.2d 305, 312 (Ct.App.1991). Putting one in such a quandary takes away the freedom to invoke the privilege without repercussions and abrogates any opportunity to make meaningful decisions. *See id.*

■ Moreover, due process at a minimum requires notice and an opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965); *United States v. Crozier*, 777 F.2d 1376, 1383 (9th Cir.1985) (forfeiture claimants

had significant property interests and due process requires meaningful opportunity for hearing). This petitioner has not only challenged the propriety of forfeiture, but also the legality of the government's actions under the Fourth Amendment and article 2, section 8 of the Arizona Constitution. As he concedes, we need not presently decide whether the exclusionary rule applies in this or other forfeiture proceedings.[4] However, because petitioner has a colorable argument that it does, he ought to have an opportunity to present it. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965) (evidence seized in violation of Fourth Amendment cannot be used to prove state's forfeiture case); *State v. $19,238 in United States Currency*, 157 Ariz. 178, 182, 755 P.2d 1166, 1170 (Ct.App.1988) (recognizing same). We agree with the United States Supreme Court that it is "intolerable that one constitutional right should have to be surrendered in order to assert another." *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

Legislative will must yield to constitutional dictates. We recognize, however, that "[a]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Crampton v. Ohio*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) (upholding Ohio practice of determining guilt and punishment in same proceeding though defendant was forced to either waive privilege or forego opportunity to speak at sentencing); *see also State v. Comer*, 165 Ariz. 413, 419, 799 P.2d 333, 339 (1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991) ("Where joinder of counts is proper, the fifth amendment is not violated by the fact that the defendant must elect to testify on all or none of the counts.").

3. Amicus argues that if the state failed to show probable cause, petitioner might still have recovered the money. In support of this argument, it cites A.R.S. §§ 12–941 to 12–946, dealing with "unclaimed money or property." We need not decide the issue, but merely note that § 12–941 states: "Those items that have a useful value to a law enforcement agency may be retained and utilized by that ... agency." Moreover, even if petitioner were given a chance to secure the

money under § 12–946(A), which provides for the return of unclaimed money to "the owner or person entitled to [it]," he would likely be required to give information similar to that needed here for standing. Thus, he would face the same dilemma.

4. *See, e.g.*, A.R.S. § 13–4310(E)(3).

Whether the requirement imposing such a choice is constitutional depends on the degree to which it impairs the rights involved and the extent to which it serves legitimate governmental interests. *Crampton,* 402 U.S. at 213, 91 S.Ct. at 1454.

■ We acknowledge the state's need to protect against fraudulent claims. *Benson,* 172 Ariz. at 20, 833 P.2d at 37. A.R.S. § 13–4311(D), which allows only an "owner of or interest holder in the property" to file a claim, and the disclosure requirements of § 13–4311(E), together work to insure that only legitimate stakeholders gain status as claimants. But such concerns were adequately met here, or at least they should have been. Petitioner asserted that he owned the currency in question and gave the date and place of its acquisition. The property was taken directly from his possession. No one else claimed an interest in it. *See Benson,* 172 Ariz. at 20, 833 P.2d at 37 (similar facts sufficient to meet substantive concerns of § 13–4311).

Support for our conclusion that this showing was sufficient can be found in comparable cases where standing has been allowed under the federal narcotics forfeiture statute, 21 U.S.C. § 881. *See, e.g., United States v. $191,910 in United States Currency,* 16 F.3d 1051 (9th Cir.1994) (money seized pursuant to a dog alert on luggage in claimant's possession, plus claim of part ownership); *United States v. $38,570 United States Currency,* 950 F.2d 1108 (5th Cir.1992) (claimant's presence at scene of seizure, some dominion over money, and claim of ownership); *United States v. $68,580 in United States Currency,* 815 F.Supp. 1479 (M.D.Ga.1993) (claim of ownership plus evidence of dominion over money). There is also authority that possession alone may be sufficient to permit standing. *See, e.g., United States v. $122,043 in United States Currency,* 792 F.2d 1470 (9th

Cir.1986).[5] Indeed, it has been suggested that possession is particularly good evidence of entitlement to money because of its negotiability. *United States v. Wright,* 610 F.2d 930, 939 (D.C.Cir.1979).

In urging its position, the state points to a number of federal forfeiture cases dismissing the claims of parties who invoked their Fifth Amendment privilege when attempting to establish standing. *See, e.g., Mercado v. United States Customs Serv.,* 873 F.2d 641 (2d Cir.1989); *Baker v. United States,* 722 F.2d 517 (9th Cir.1983). We note, however, that although the federal statute, 21 U.S.C. § 881, has the similar goal of avoiding fraudulent claims, *see Baker* at 519, it does not obligate claimants to disclose the type of information required by the Arizona statute. Instead, 21 U.S.C. § 881 repeatedly refers to the rights and liabilities of an "owner," a term that Congress has decreed "should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." Joint Explanatory Statement of Titles II and III, 124 Cong.Rec. S 17647 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9518, 9522. As petitioner points out, in all of the cases cited by the state the parties sought to avoid being included even in this broad category. In other words, they refused to claim any ownership interest in the subject property.[6] Thus, allowing such parties to intervene clearly would not have served the purpose of protecting against false claims.

As we have observed, the possibility of fraud in this case is slight. Compelling petitioner to disclose the time, transferor, and circumstances of his acquisition of the currency would not appreciably reduce the chances of a bogus claim and could conceivably expose him to the risk that his state-

---

5. *But see, United States v. $321,470, United States Currency,* 874 F.2d 298 (5th Cir.1989) (mere possessor without either legal or equitable ownership interest lacks standing); *United States v. $53,082 in United States Currency,* 773 F.Supp. 26 (E.D.Mich.1991), *aff'd,* 985 F.2d 245 (6th Cir. 1993) (possession is sufficient for standing only in the absence of serious doubts regarding claimant's entitlement).

6. Indeed, the Ninth Circuit in *Baker,* 722 F.2d at 518, distinguished *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), on these grounds. In *United States Coin,* the Court held that the Fifth Amendment precluded forfeitures based solely on the refusal to declare oneself a gambler, and the case did not involve a refusal to claim ownership of the forfeited items.

ments might be used against him in a future prosecution. In addition, requiring him to give this information might help the government meet what is supposed to be its initial burden. Forfeiture statutes have increasingly been criticized for threatening due process rights by allowing the government to establish probable cause under a lesser standard of proof, and thereafter shifting the ultimate burden to claimants. *See, e.g., United States v. $191,910 in United States Currency,* 16 F.3d 1051, 1069 (9th Cir.1994) (disparity between government's and claimant's burdens "involves a serious risk that an innocent person will be deprived of his property"). As the Second Circuit recently stated: "We continue to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process that is buried in those statutes." *All Assets,* 971 F.2d at 905; *see also In re 1986 Chevrolet Corvette,* Ariz., 1994 WL 373854 (1994) (expressing concern over government's increasing power in forfeiture area); Henry J. Reske, *A Law Run Wild: Conservative Lawmaker Seeks Asset Forfeiture Limits,* 79 A.B.A. J. 24 (Oct.1993) (chronicling government abuse of forfeiture system). The Supreme Court has also recently tended to curtail governmental authority in forfeiture cases. *See United States v. James Daniel Good Real Property,* —— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (requiring notice and an opportunity to be heard); *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (Eighth Amendment's excessive fines clause applies to civil forfeiture proceedings); *United States v. 92 Buena Vista Ave.,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (owner's ignorance of fact that her home was purchased with proceeds of illegal drug transactions is a defense to forfeiture proceeding).

We reject the suggestion that petitioner is here attempting to use the privilege as a sword. *See, e.g., Wehling,* 608 F.2d at 1087. It appears, instead, that he merely seeks to safeguard his rights under circumstances where there is no realistic threat that his claim is fraudulent. Moreover, we are mindful that the privilege against self-incrimination should be interpreted liberally in favor of those to be protected. *Ott,* 167 Ariz. at 426, 808 P.2d at 311; *State v. Smith,* 101 Ariz. 407, 409, 420 P.2d 278, 280 (1966); *State v. Dean,* 8 Ariz.App. 508, 512, 447 P.2d 890, 894 (1968). A weighing of the competing interests in this case suggests that there is no reason to burden petitioner's right to remain silent. Accordingly, we find that dismissing him from these proceedings was unduly harsh. "When ... silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness" to the parties involved. *Wehling,* 608 F.2d at 1088; *United States v. United States Currency,* 626 F.2d 11, 16 (6th Cir. 1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980) (remand required to determine how best to accommodate conflicting interests of government and claimant).

It is a general policy of the law that "cases should be tried on their merits if it is at all possible." *Goodman v. Cushman,* 92 Ariz. 276, 279, 376 P.2d 394, 395 (1962). Because granting this petitioner standing imposes no unfairness on the state, allowing the matter to proceed is the best remedy here. However, there may be times when, in order to establish a sufficient property interest, it will be necessary for a claimant to provide incriminating information. Under those circumstances, other remedies may be appropriate, such as staying forfeiture proceedings pending the outcome of any related criminal charges or requiring immunity for the claimant's disclosures. *See Simmons,* 390 U.S. at 394, 88 S.Ct. at 976 (testimony to establish standing must be immunized); *All Assets,* 971 F.2d at 905 (recommending stay); *United States Currency,* 626 F.2d at 16–18 (exploring alternatives for accommodating parties' interests); *Wehling,* 608 F.2d at 1089 (ordering court to stay civil proceedings); *Ott,* 167 Ariz. at 428, 808 P.2d at 313 (advocating stay if parallel proceedings would substantially prejudice defendant's rights); Jay A. Rosenberg, Note, *Constitutional Rights and Civil Forfeiture Actions,* 88 Colum.L.Rev. 390 (1988) (comparing advantages and disadvantages of stay versus immunity).

Finally, we reject the state's contention that *Benson,* 172 Ariz. 15, 833 P.2d 32, is dispositive of the issue before us. There, the court of appeals concluded that § 13–4311(E) contains mandatory language regarding the elements needed to assert a claim. It refused to grant standing to claimants who had not disclosed all of the required information, but additionally ruled that they should have been given leave to amend their claim to comply with the statute. *Benson* is distinguishable from the present situation because in that case the claimants did not invoke the constitutional privilege against self-incrimination.

For all of the foregoing reasons, we hold that striking petitioner's claim violated the Fifth Amendment of the Federal Constitution and article 2, section 10 of the Arizona Constitution. We reverse the judgment of forfeiture, vacate the trial court's order, and remand the matter for further proceedings.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.