NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSE N., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.N., L.N., T.N., L.N., *Appellees.*

No. 1 CA-JV 15-0159
FILED 1-26-2016

Appeal from the Superior Court in Maricopa County
No. JD27991
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

**¶1**        Jose N. ("Father") appeals the order terminating his parental rights to four of his children.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Father was married to Mother, and they had four children ("the Children").  Mother also had an older child that she brought to the relationship.  Father's step-daughter ("Daughter") ran away on March 10, 2014, to her maternal grandmother's ("Grandmother") house.  She told Grandmother that, while Mother was at work, Father raped her twice that day.  Grandmother immediately called the Maricopa County Sheriff's Office ("MCAO").

**¶3**        After interviewing Grandmother and Daughter, the detectives went to Father's house.  No one answered the door, but Father later fled, telling Mother he "[didn't] want to go back to jail."  The detectives subsequently obtained a warrant, located Father, and arrested him the next day.

**¶4**        The Department of Child Services ("DCS") took custody of the Children and eventually filed a motion to terminate Father's parental rights to the Children.  The juvenile court granted the motion, finding that DCS had proven that Father had willfully abused Daughter, and that termination was in the Children's best interests.  Father appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-2101(A)(1).[2]

---

[1] "We view the facts in the light most favorable to upholding the juvenile court's order."  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (citation omitted).
[2] We cite to the current version of the statute unless otherwise noted.

## DISCUSSION

¶5        Father raises three arguments.  First, he claims the evidence was insufficient that he abused Daughter.  Second, he contends termination was not in the best interests of the children.  Finally, he claims the juvenile court violated his due process rights, warranting reversal of the termination of his parental rights.

¶6        A parent has a constitutional right to raise his or her children, *see Santosky v. Kramer*, 455 U.S. 745, 753 (1982), but that right is not absolute, *see Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005). In order to terminate parental rights, DCS must prove and the juvenile court must find, by clear and convincing evidence, the existence of at least one of the statutory grounds stated in A.R.S. § 8-533.  A.R.S. § 8-537; *Kent K.*, 210 Ariz. at 281-82, ¶ 7, 110 P.3d at 1015-16.  The court must also find by a preponderance of the evidence that termination would be in the best interests of the children.  *Kent K.*, 210 Ariz. at 288, ¶ 42, 110 P.3d at 1022. And while we review de novo legal issues requiring the interpretation and application of A.R.S. § 8-533, *Mary Lou C. v. Ariz. Dep't. of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 9, 83 P.3d 43, 47 (App. 2004), "[w]e will not disturb the juvenile court's disposition absent an abuse of discretion or unless the court's findings of fact were clearly erroneous." *Maricopa Cty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996).

**A. Sufficiency of the Evidence**

¶7        Father argues there was no "significant or reliable evidence" that he abused Daughter and notes that, at the time of the termination hearing, he had not yet been convicted.  We disagree.

¶8        Willful abuse of a child justifies termination of parental rights, A.R.S. § 8-533(B)(2), and "includes serious physical or emotional injury." *Id.*  Moreover, the statute "permits termination of parental rights to a child who has not been abused or neglected, upon proof that the parents abused or neglected *another* child." *Mario G. v. Ariz. Dep't. of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 15, 257 P.3d 1162, 1165 (App. 2011) (emphasis added) (citing *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 79, ¶ 14, 117 P.3d 795, 798 (App. 2005)).

¶9        At the trial, and without objection, DCS introduced several exhibits containing statements Daughter made after she told her Grandmother about the abuse.  Her statements were admissible under Arizona Rule of Procedure for the Juvenile Court 45(E) because the time,

content, and circumstances of her statements provide sufficient indicia of reliability.

¶10 Daughter's statements included an interview with a special-victims-unit detective. She told the detective specific and graphic details about Father raping her after he told the other Children to go outside, including his use of force to make her comply and threatening her with death if she told anyone. She also explained, with details, that afterwards Father told her to shower and raped her again an hour later.

¶11 She had also told the same detailed story to her Grandmother and boyfriend on March 10. Additionally, the results of her forensic medical examination were consistent with her testimony, including the injuries caused by Father. And her then six-year-old sister, who was still inside the house, told a forensic interviewer that she saw Father pulling Daughter by her hair, and that she heard Daughter crying and screaming for "help."

¶12 In addition, the documents revealed that Daughter told the authorities that Father had also physically abused her; the most recent episode occurred when Father beat her with a closed fist and "busted her eye open," leaving a scar above her left eye. Her statement about the physical abuse was corroborated by Mother, Grandmother, and Daughter's grandfather.

¶13 "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence . . . ." *Jordan C. v. Ariz. Dep't. of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009) (internal quotation marks and citation omitted). Based on the record, there was sufficient evidence for the court to conclude that Father willfully abused Daughter. And because Arizona law does not require a conviction to prove abuse, *see Pima Cty. Juv. Severance Action No. S-2462*, 162 Ariz. 536, 539, 785 P.2d 56, 59 (App. 1989), the court did not abuse its discretion by finding there was sufficient evidence to terminate Father's parental rights.

**B. Best Interests**

¶14 Father also contends the court erred in finding that termination was in the best interests of the Children. He claims DCS failed to show that reunification would be detrimental to the Children, and argues that, because Mother's rights were not terminated, the court should have simply ordered supervised visitation. We disagree.

¶15  First, we presume that "the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K.*, 210 Ariz. at 286, ¶ 35, 110 P.3d at 1020. And we give great weight to a child's interest in being in a safe, loving, and stable home. *See id.* at 287, ¶ 37, 110 P.3d at 1021. Therefore, to establish best interests, DCS had to prove that "the [Children] would benefit from a severance *or* be harmed by the continuation of [their] relationship" with Father. *See Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) (citations omitted).

¶16  Here, Mother complied with the dependency case plan, had the Children returned to her, and divorced Father. She was a witness at the termination trial, and testified that his rights should be terminated because "he raped [Daughter] . . . [and] I need to protect my other daughters." The juvenile court, as a result of her testimony and the other evidence, concluded that termination was in the Children's best interests because DCS had proven that continuation of the relationship would be a detriment to all five children because Father physically and sexually abused Daughter and it would guarantee that all the children would be safe from him in the future. We find no factual or legal error with the court's conclusion that termination of Father's parental rights was in the best interests of the Children.

**C. Due Process Violations**

¶17  Father argues the court violated his rights because Daughter did not testify at trial, and because the court drew a negative inference when he invoked his Fifth-Amendment rights at the termination hearing. We disagree.

¶18  First, Father did not make these arguments below. But "[b]ecause of the constitutional ramifications inherent in termination proceedings," we will still address his arguments for fundamental error. *See Monica C. v. Ariz. Dep't. of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 23, 118 P.3d 37, 42 (App. 2005). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984).

¶19     Father claims he had a right to confront Daughter about her allegations against him.  He, however, did not call her to testify, try to subpoena her, and never asked the juvenile court to cross-examine Daughter.  More importantly, the constitutional right to confront an accuser "has no direct application in proceedings to terminate parental rights, which are essentially civil in nature."  *Maricopa Cty. Juv. Action No. JS-7499*, 163 Ariz. 153, 157, 786 P.2d 1004, 1008 (App. 1989).

¶20     Father also contends that the juvenile court erred by drawing negative inferences after he invoked his Fifth Amendment right not to incriminate himself during his cross-examination.  The court did not err.  Although Father had the "constitutional right to refuse to answer potentially incriminating questions," *see Montoya v. Superior Court*, 173 Ariz. 129, 130, 840 P.2d 305, 306 (App. 1992), a court, in a civil case, can "draw a negative inference from" the invocation of the Fifth Amendment.  *Id.* at 131, 840 P.2d at 307; *see also Wohlstrom v. Buchanan*, 180 Ariz. 389, 391 n.2, 884 P.2d 687, 689 n.2 (1994); *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 53, ¶ 20, 213 P.3d 197, 202 (App. 2009).

## CONCLUSION

¶21     We affirm the termination of Father's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama